UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

March 7, 2014

LETTER TO COUNSEL:

      RE:    *Stephen A. Mangal v. Commissioner, Social Security Administration*;
              Civil No. SAG-13-1289

Dear Counsel:

On April 30, 2013, the Plaintiff, Stephen A. Mangal, petitioned this Court to review the Social Security Administration's final decision to deny his claims for Child's Insurance Benefits, Supplemental Security Income, and Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment, and Mr. Mangal's Opposition to the Commissioner's motion. (ECF Nos. 19, 23, 28). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). I will deny both motions, vacate the opinion of the Administrative Law Judge, and remand the case for further consideration. This letter explains my rationale.

Mr. Mangal filed his claims for benefits on August 16, 2010, alleging a disability onset date of November 1, 2002. (Tr. 116-27). His claims were denied initially on December 3, 2010, and on reconsideration on March 7, 2011. (Tr. 73-77, 81-84). A hearing was held on January 10, 2012 before an Administrative Law Judge ("ALJ"). (Tr. 38-62). Following the hearing, on February 24, 2012, the ALJ determined that Mr. Mangal was not disabled during the relevant time frame. (Tr. 9-25). The Appeals Council denied Mr. Mangal's request for review, (Tr. 1-4), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Mr. Mangal suffered from the severe impairments of depressive disorder and anxiety disorder, and the non-severe impairment of obesity. (Tr. 15). Despite these impairments, the ALJ determined that Mr. Mangal retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels, but with the following less than occasional mental limitations affecting his ability to: maintain concentration and attention for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, work in coordination with or in proximity to others without being distracted by them, complete a normal work day and work week without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable length and number of rest periods, interact appropriately with the general public, get along with co-workers and peers without distracting them or

> exhibiting behavioral extremes, respond appropriately to changes in the work setting, and set realistic goals and make plans independent of others, but he would be expected to remain productive more than 85% of an eight-hour day.

(Tr. 16-17). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Mangal could perform jobs existing in significant numbers in the national economy, including past relevant work as a valet, and that he was not therefore disabled. (Tr. 19-21).

Mr. Mangal presents two primary arguments on appeal: (1) the ALJ did not assign sufficient weight to the opinion of his treating mental health provider, Dr. Carnegie; and (2) that the hypothetical presented to the VE was inadequate. I concur that the ALJ erred in the analysis of Dr. Carnegie's opinions and in the formulation of the hypothetical, and further find that the ALJ's Listing analysis was inadequate. Accordingly, I remand for appropriate analysis. In so holding, I express no opinion as to whether the ALJ's ultimate conclusion that Mr. Mangal is not entitled to benefits was correct or incorrect.

First, the ALJ characterizes Dr. Carnegie as having performed a "consultative mental assessment." (Tr. 18). Although contemporaneous treatment notes are not contained in the record, it is clear that Dr. Carnegie treated Mr. Mangal on a regular basis for his mental health conditions. *See* (Tr. 306) (Dr. Carnegie reports that he treats Mr. Mangal once per week). Ironically, the ALJ states that he assigned little weight to Dr. Carnegie's opinion as it "was conclusory, providing very little objective explanation of the evidence relied on in forming that opinion, rendering it unpersuasive." (Tr. 18). That same description could be applied to the ALJ's assessment of Dr. Carnegie's opinion. In fact, later in the opinion, the ALJ suggests that an earlier report from Dr. Carnegie "does not reflect an inability to function or work." *Id.* In fact, the earlier report states that, "This client has had several attempts at meeting his academic and occupational goals but have not done well but only to fail . . . This client lacks the ability to achieve basic standard of living without persistent and extensive insight-oriented and supportive therapy strategies." (Tr. 240). That analysis is consistent with Dr. Carnegie's subsequent opinion that Mr. Mangal is incapable of sustaining gainful employment. Because Dr. Carnegie is a treating mental health provider, greater specificity in the analysis of his opinion is required to permit me to review the ALJ's determination that Dr. Carnegie's report is entitled only to little weight.[1]

With respect to the hypothetical presented to the VE, it does not appear to align precisely with the RFC assessment. In the hypothetical, the VE was presented with a list of mental limitations, but was asked to "assume that all of the limitations are moderate, which is defined in the record as meaning that there is more than a slight limitation as to the performance of an individual activity, but that the individual still is able to function satisfactorily in an eight-hour

---

[1] However, on remand, the ALJ should verify whether Dr. Carnegie is an "acceptable medical source." *See* 20 C.F.R. § 404.1513 and SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Although Dr. Carnegie lists a Ph.D. among his credentials, his stationary describes him alternatively as a licensed clinical professional counselor, licensed psychotherapist, or clinical hypnotherapist, and thus it is not entirely clear whether he is a licensed psychologist. (Tr. 405-06).

day doing simple tasks that are unskilled." (Tr. 58). In contrast, the RFC assessment states that the same list of limitations are "less than occasional" but that the hypothetical individual would "be expected to remain productive more than 85% of an eight-hour day." (Tr. 17). In a footnote, the ALJ states that "the term 'moderate' . . . generally means that there is more than a slight limitation, but that the individual is still able to function effectively in an eight-hour day. However, in posing questions to the vocational expert, the mental limitations were framed in terms of the effect on productivity, inasmuch as functioning and productivity are considered as equivalent in meaning for the purpose of this decision." (Tr. 17 at n.1). The ALJ provides no authority for equating his definition of "moderate" with an ability to remain productive more than eighty-five percent of a day. Moreover, given the nature of the mental limitations in the RFC assessment, it is unclear what the meaning of "remain productive more than 85% of an eight-hour day" would mean. For example, the limitations include the ability to "interact appropriately with the general public" and "get along with co-workers and peers without distracting them or exhibiting behavioral extremes." (Tr. 17). A person who exhibits behavioral extremes during fifteen percent of each workday would be unlikely to sustain employment. Nevertheless, the wording of the RFC assessment and hypothetical placed no limitation on whether the jobs could involve regular interaction with the public or co-workers. In light of the inconsistencies between the RFC assessment and the hypothetical, the lack of substantial evidence supporting the "equivalence" between the ALJ's definition of moderate and the ability to remain productive for eighty-five percent of a workday, and the inherent vagueness in the RFC assessment, remand is warranted.

Finally, although Mr. Mangal did not raise the issue, the ALJ's assessment of the relevant mental health Listings was inadequate, because the ALJ did not make or explain his findings with respect to each of the "paragraph B" criteria. Although Mr. Mangal may have declined to raise the argument because he viewed the Listings as unlikely to be met, because the case is being remanded on other grounds, the ALJ should provide an adequate assessment of each of the "paragraph B" criteria.

For the reasons set forth herein, both parties' motions for summary judgment (ECF Nos. 19 and 23) will be DENIED. The opinion of the Administrative Law Judge is VACATED and the case is REMANDED to the Commissioner for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

              Sincerely yours,

              /s/

              Stephanie A. Gallagher
              United States Magistrate Judge